UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

ALICE SMITH,                          )
                                      )
            Plaintiff,                )
                                      )
v.                                    )          NO.: 3:11-CV-510
                                      )
LVNV FUNDING, LLC, *ET AL.*,          )
                                      )
            Defendants.               )

MEMORANDUM OPINION AND ORDER

This Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, case is

before the Court on plaintiff's Motion for Partial Summary Judgment, [Doc. 109], and

defendants' Motion for Summary Judgment, [Doc. 100]. Plaintiff argues that there is no genuine

issue for trial regarding whether the Defendant LVNV Funding, LLC ("LVNV") violated the

FDCPA when it filed a state court lawsuit without being licensed as a debt collection service in

Tennessee. In defendants' motion, defendants LVNV, Tobie Griffin ("Griffin"), and Buffaloe &

Associates, PLC ("Buffaloe") (collectively "defendants") seek dismissal of all of plaintiff's

claims arising under the FDCPA for failure to create genuine issues of material fact. Responses

have been filed, [Docs. 114 and 115], and the matters are ripe for review. For the reasons stated

below, the plaintiff's motion is DENIED, and the defendants' motion is GRANTED.

**I. BACKGROUND**

It is undisputed that the plaintiff had a Capital One credit card account.[1] The account was

transferred to LVNV in 2009. At the time of the transfer, the amount owed was $1,384.99.

_____

[1] Plaintiff testified in her deposition that she had an account and could not remember whether she paid it in full. She
also stated at one point that her account could have been merged with someone else's account. When questioned

LVNV placed the account with Resurgent Capital Services, LP ("Resurgent"), which manages and services delinquent accounts. Resurgent hired Buffaloe, a law firm licensed in Tennessee, to collect the debt for LVNV.

On May 27, 2010, and June 15, 2010, Buffaloe sent the plaintiff a collection letters. Buffaloe sent additional correspondence on June 23, 2010, and September 7, 2010. The plaintiff never disputed the debt with Buffaloe in writing. Then on October 27, 2010, Buffaloe filed a collection lawsuit in state court on behalf of LVNV. Attached to the civil warrant was an affidavit of sworn account signed by Griffin, an authorized representative of LVNV. The warrant sought a money judgment in the amount of "$1,384.99, plus pre and post judgment interest accruing at the statutory rate of 10% and court costs of this cause of $132.00, and service of process fees in the amount of $22.00." The affidavit stated that as of the date of assignment, the plaintiff owed "$1,384.99 plus any additional accrued interest."

The plaintiff filed a sworn denial in state court. Then, the state suit was non-suited. The plaintiff filed this federal action in this Court on October 27, 2011, and amended the Complaint on January 27, 2012.

The plaintiff alleges that the defendants violated several provisions of the FDCPA by:

> (1) using any false, deceptive, or misleading misrepresentation or means in connection with the collection of any debt, 15 U.S.C. § 1692e;
>
> (2) falsely representing the "character, amount, or legal status" of the debts, 15 U.S.C. § 1692e(2)(A);
>
> (3) threatening to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5);

---

further, she stated she had no basis for this speculation. Nonetheless, she admitted in her declaration that she defaulted on the account prior to its assignment to LVNV, [Doc. 111-1, ¶ 7]. In addition, she never alleges or makes the argument that the defendants violated the FDCPA for attempting to collect on an account not owned by her or charges not incurred by her.

(4) communicating to any person credit information which is known or which should be known to be false, 15 U.S.C. § 1692e(8);

(5) using a false representation or deceptive means in an attempt to collect the debts, 15 U.S.C. § 1692e(10);

(6) failing to disclose in an "initial communication" that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose; and failing to disclose in a subsequent communication that the communication is from a debt collector, 15 U.S.C. § 1692e(11);

(7) using unfair or unconscionable means to collect or attempt to collect a debt, 15 U.S.C. § 1692f; and

(8) collection of any amount (including interest, fees, etc.) unless such amount was expressly authorized by the agreement creating the debt or is permitted by law, 15 U.S.C. § 1692f(1).

Plaintiff also asserts that LVNV is liable for the acts and omissions of Buffaloe and Griffin under the theory of *respondeat superior*.

This Court admits that it has been difficult to discern the actual claims and arguments put forth by the plaintiff. Perhaps due to the difficulty in understanding the Complaint and plaintiff's filings, defendants' filings have likewise not been a model of clarity. Considering the entire record and the specifics listed above, this Court will address the following issues:

1. Whether defendants violated various sections of the FDCPA by their routine practice of filing a state lawsuit allegedly having demonstrated no intention of litigating the case on the merits?;

2. Whether defendants violated various sections of the FDCPA by supporting their state court collection action with an affidavit that was allegedly not based on personal knowledge?;

3. Whether defendants violated the FDCPA for communicating credit information which was allegedly known to be false or should be known to be false?;

4.  Whether defendants violated various sections of the FDCPA due to the warrant and affidavit listing "inconsistent" amounts?;

5.  Whether defendants violated various sections of the FDCPA because the warrant and affidavit requested interest and attorney's fees[2] and the defendants have allegedly failed to produce a contract allowing for such collection?;

6.  Whether defendants violated various sections of the FDCPA because the specific interest rates stated in the warrant, affidavit, and other filings in the case were different (not specifically addressed by plaintiff in Response)?;

7.  Whether defendants violated various sections of the FDCPA because the interest rates listed in the warrant and affidavit were for rates not allowed by Tennessee law (not specifically addressed by plaintiff in Response)?;

8.  Whether defendants violated section 1692e(11) for failing to include the requisite language in the Sworn Affidavit (not specifically addressed by plaintiff in Response)?;

9.  Whether LVNV is required to have a state collection service license?; and

10.  Whether there is an issue of fact regarding vicarious liability?[3]

The Court will discuss each issue in turn after setting forth the standard of review.

## II. STANDARD OF REVEW

---

[2] The warrant and affidavit do not actually seek attorney's fees. However, the plaintiff argues as if they did in her Response. Thus, this Court will address the issue in terms of requested interest only. For a discussion regarding attorney's fees see *Lorinda Smith v. LVNV Funding, LLC, et al.*, No. 2:11-CV-379, 2014 WL 3810633 (E.D. Tenn. Aug. 1, 2014).

[3] The plaintiff alleges issues six, seven and eight in her Amended Complaint. Technically, these three claims are waived because of the failure to address them in the Response and, thus, the failure to carry the burden to show there is a genuine issue for trial. However, because these issues have been raised in related cases and closely relate to other issues regarding collection amounts, the Court will address them in further detail.

The Complaint also alleges another amounts issue. The plaintiff claims, in regards to the Affidavit, that the "principal had not been correctly reduced due to misapplication of payments to the balance owed as a result of the addition of interest at a rate greater than allowed under Tennessee law for unwritten contracts." [Doc. 12, ¶ 74]. This issue is not developed at all. Therefore, the plaintiff has failed miserably to show that there is a genuine issue for trial, and the Court will not address it further.

The summary judgment standard is well settled. Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

Regarding the FDCPA, it was passed to eliminate "abusive, deceptive, and unfair debt collection practices." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting 15 U.S.C. § 1692(a)). The Sixth Circuit has noted that the act is "extraordinarily broad" and must be enforced as written, even when eminently sensible exceptions are proposed in the face of an innocent and/or *de minimis* violation. *See Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992). While § 1692e lists a number of examples of false or misleading representations, the text of the statute itself indicates that the examples are not meant to limit its prohibition on the use of false, deceptive or misleading representations in connection with the collection of a debt. 15 U.S.C. § 1692e. Likewise, § 1692f contains the same language, making clear that the examples set forth therein do not "limit[ ] the general application" of its prohibition on the use of unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f. The Seventh Circuit recently observed that the phrase "unfair or unconscionable" used in § 1692f "is as vague as they come." *Beler v. Blatt, Hasenmiller, Leibsker & Moore*, 480 F.3d 470, 474 (7th Cir. 2007).

In assessing whether particular conduct violates the FDCPA, courts apply "the least sophisticated consumer" test to objectively determine whether that consumer would be misled.

*Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006); *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992). The least sophisticated consumer test is designed "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008) (quotations and citation omitted). In addition, "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f." *Clark v. Lender Processing Svs.*, -- Fed. App. --, 2014 WL 1408891, at *6 (6th Cir. Ap. 14, 2014) (citing *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010)).

The issues below are addressed applying this standard. This is an objective test that asks whether there is a reasonable likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them. *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011). The least sophisticated consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Colomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993).

## III. ANALYSIS[4]

---

[4] Throughout the Analysis section, this Court relies on several cases. These cases are summarized in previous opinions issued by this Court. See *Lorinda Smith v. LVNV Funding, LLC, et al.*, No. 2:11-CV-379, 2014 WL 3810633 (E.D. Tenn. Aug. 1, 2014) and *Bradford v. LVNV Funding, LLC et al.*, -- F.Supp.2d --, 2014 WL 1012771 (E.D. Tenn. Feb. 25, 2014), for these summaries. *See also Clark v. Main Street Acquisition Corp.*, No. 13-3763, -- Fed. Appx. --, 2014 WL 274469 (6th Cir. Jan. 17, 2014); *Murr v. Tarpon Financial Corporation*, No. 3:10-CV-372, Doc. 52 (February 10, 2014) (Collier, J.); *White v. Sherman Financial Group, LLC*, -- F. Supp. 2d --, 2013 WL 5936679 (E.D. Tenn. Nov. 4, 2013) (Varlan, C.J.); *Raceday Center, LLC v. RL BB Financial, LLC*, No. 2:11-CV-117, 2013 WL 4500437 (E.D. Tenn. August 21, 2013) (Greer, J.); *Lilly v. RAB Performance Recoveries, LLC*, No. 2:12-CV-364, 2013 WL 4010257 (E.D. Tenn. August 5, 2013) (Varlan, C.J.); *Robinson v. Sherman Financial Group*, -- F. Supp. 2d --, 2013 WL 3968446 (E.D. Tenn. July 31, 2013) (Collier, J.) (*Robinson II*); *Lilly v. RAB Performance Recoveries, LLC*, No. 2:12-CV-364, 2013 WL 3834008, at *1 (E.D. Tenn. Jul. 23, 2013) (Varlan, C.J.); *VFC Partners 10, LLC v. Cindy J. Collins*, No. 3:12-CV-291 (E.D. Tenn. June 7, 2013) (Bunning, J.); *Robinson v. Sherman Financial Group*, No. 2:12-CV-030 (E.D. Tenn. March 27, 2013) (Collier, J.) (*Robinson I*); *King v. Midland Funding, LLC*, No. 2:11-CV-120 (E.D. Tenn. August 30, 2012) (Greer, J.); *Smith v. LVNV Funding, LLC*, 894 F. Supp. 2d 1045 (E.D. Tenn. 2012) (Greer, J.); *Smith v. LVNV Funding, LLC*, No. 2:11-CV-288, Doc. 46, July 14, 2012 (Inman, M.J.); *Smith v. Accounts Research, Inc.*, No. 3:10-CV-213, 2012 WL 289835,

**A. Whether defendants violated various sections of the FDCPA by their routine practice of filing a state lawsuit allegedly having demonstrated no intention of litigating the case on the merits?**

The defendants move for summary judgment regarding causes of action under several FDCPA sections related to defendants' filing of the civil warrant and affidavit. The plaintiff first argues that the defendants had no intention of pursuing the merits of the state court case and that collection agencies cannot use the court system for debt collection through the filing of lawsuits having demonstrated no intention of litigating these cases on the merits. Doing so, the plaintiff claims, violates Title 15 United States Code sections 1692e, 1692e(5), and 1692e(10). The plaintiff alleges that the defendants purchase debt and then file the state court suit before properly reviewing any documents received and base the suit on affidavits that are signed by affiant without any personal knowledge of whether the consumer actually incurred the debt. If the consumer challenges the debt, then the defendants non-suit their state court action. The plaintiff claims that this is the defendants' pattern of practice, for the defendants non-suited in the state court all of the cases before this Court that were consolidated with this case for discovery purposes. Thus, the plaintiff claims that the defendants' business practices are deceptive and misleading to the least sophisticated consumer in violation of the FDCPA. For these contentions, the plaintiff relies upon *Samuels v. Midland Funding, LLC*, 921 F.Supp.2d 1321 (S.D. Ala. 2013) and *LVNV Funding, LLC v. Mastaw*, No. M2011–00990–COA–R3–CV, 2012 WL 1534785 (Tenn. Ct. App. Apr. 30, 2012).

This Court agrees with Judge Varlan's reasoning in *White v. Sherman Financial Group, LLC, et al.*, -- F.Supp.2d --, 2013 WL 5936679, at *5 (E.D. Tenn. Nov. 4, 2013), a case virtually identical to the one at hand, that the reliance on *Samuels* is misplaced. *Samuels* dealt

---

at *1 (E.D. Tenn. Jan. 31, 2012) (Varlan, C.J.); *Stonecypher v. Finkelstein Kern Steinberg & Cunningham*, No. 2:11-CV-13, 2011 WL 3489685, at *1 (E.D. Tenn. Aug. 9, 2011) (Mattice, J.).

with a motion under Rule 12(b)(6) and not Rule 56. Also, unlike in *Samuels*, the defendants here attached a sworn affidavit to their state court suit, evidencing an intent to pursue the action. There is no evidence in the record pointed to by plaintiff to support her claims that this is a pattern of practice. In addition, there is no evidence in this record of defendants' intent to hire Buffaloe to file suit on LVNV's behalf without the intention of following through with the action.

**B. Whether defendants violated various sections of the FDCPA by supporting their state court collection action with an affidavit that was allegedly not based on personal knowledge?;**

The plaintiff's claim that the defendants violated various sections of the FDCPA because the affidavit was misleading because it was not based on personal knowledge also fails. *Mastaw* is not persuasive as to the affidavit's alleged misleading nature. *Mastaw* was not a FDCPA case, and it decided only whether affidavits were properly admitted under the business records exception to the hearsay rule. *See* Tenn. R. Evid. 803(6). Plaintiff alleges that the affidavit was made without sufficient personal knowledge. However, the plaintiff has presented no evidence that the allegations in the affidavit as to the amount of the debt are false or misleading. Again, this Court finds *White* persuasive and relies on its reasoning. 2013 WL 5936679, at *5.

In addition, a recent Sixth Circuit opinion dooms plaintiff's claim that Griffin's affidavit in the state court collection action was false and misleading because it was not based on personal knowledge. *See Clark v. Main Street Acquisition Corp.*, No. 13-3763, -- Fed. Appx. --, 2014 WL 274469 (6th Cir. January 17, 2014). In the affidavit Griffin states that she has "personal knowledge" of LVNV's business records "including computer records of its accounts receivables," and those records include records provided by the original creditor to LVNV. [Doc. 1-1]. The plaintiff claims that this gives the false impression that Griffin has personal

knowledge of the affidavit's facts and that the records were LVNV's and the original creditor's properly authenticated documents.

In *Clark*, the plaintiff made these same claims with regard to a very similar affidavit. The Sixth Circuit disagreed, stating, "[The affiant's] claims of personal knowledge referred to Main Street's business records, which included the original lender's records. Such a statement is permitted by the [FDCPA]." 2014 WL 274469 at *4. Such an affidavit is not "inaccurate or misleading," and, even if it was, the "representation was still not material" because the "least sophisticated consumer understands that lenders and debt collectors will by necessity have to rely on business records they may not have personally created . . ." *Id.*

**C. Whether defendants violated the FDCPA for communicating credit information which was allegedly known to be false or should be known to be false?**

The plaintiff alleges that the defendants violated 1692e(8). [Doc. 12, ¶¶ 49 and 75]. The plaintiff alleges the defendants communicated false or misleading information or information they should have known to be false in the warrant and affidavit to the state court, the general public and the plaintiff. The plaintiff addresses the 1692e(8) issue in one paragraph in her Response. The issue is not developed at all but merely mentioned, and the Response fails to address anything specific. It states general legal principles and string citations not tied to the specific facts in this case. Thus, the plaintiff has failed to carry her burden to show there is a genuine issue of fact for trial.

**D. Whether defendants violated various sections of the FDCPA due to the warrant and affidavit listing "inconsistent" amounts?**

The plaintiff argues in essence that the amounts listed in the warrant and affidavit are inconsistent, and, thus, one is false or misleading in violation of sections 1692e, 1692f and various other subsections. As stated above, the warrant states the amount due is "$1,384.99, plus

pre and post judgment interest accruing at the statutory rate of 10% and court costs of this cause of $132.00, and service of process fees in the amount of $22.00." The affidavit stated that as of the date of assignment, the plaintiff owed "$1,384.99 plus any additional accrued interest."

The principal amounts are the same. Thus, they are not inconsistent. The affidavit merely states the principal amount "plus any additional accrued interest is due." The warrant states a specific rate for pre-and-post judgment interest. However, this amount is not inconsistent with the affidavit because the affidavit does not list a specific rate or amounts. It merely states that additional interest will accrue. As for attorney's fees and costs, the warrant does not seek attorney's fees, and the affidavit does not state attorney's fees and costs are due and owing. The affidavit does not state as such because they have not yet accrued. Thus, there is no inconsistency regarding attorney's fees and costs. Moreover, state law allows collection of costs. *See* Tenn. Code Ann. § 20-12-101 (2010)[5] (allowing for the collection of costs); Tenn. R. Civ. P. 54.04(1) (same); *see also Clark*, 2014 WL 274469, at *3; *White*, 2013 WL 5936679, at *6. Even if one did list costs and the other did not, they would not be inconsistent when costs are amounts that can legally be collected. The least sophisticated consumer would not find this false or misleading. This conclusion is the same conclusion reached by Judge Varlan in *White*, 2013 WL 5936679 at *6. Again, this Court finds no issue of fact for the alleged violations of 1692e, 1692f and the various subsections thereunder.

**E.  Whether defendants violated various sections of the FDCPA because the warrant and affidavit requested interest and attorney's fees and the defendants have allegedly failed to produce a contract allowing for such collection?**

---

[5] The Court will use the 2010 version of the Tennessee Code Annotated because the state suit was filed on October 27, 2010.

     In addition, the plaintiff never alleges that the defendants violated the FDCPA for seeking to collect service of process fees. Thus, this Court will not address the issues separately.

11

The plaintiff also argues that the defendants have violated the FDCPA because the warrant and affidavit requested interest and attorney's fees and have failed to produce a contract which allows for such collection. The Court finds the reasoning in *White* persuasive as well on the issue of interest. *Id.* There, Judge Varlan found "plaintiff's argument that defendant failed to show evidence of an agreement permitting the 10% interest rate unavailing in light of the statute which provides for this rate." *Id.* It is undisputed that Tennessee law allows for the collection of pre- and post- judgment interest. *See* Tenn. Code Ann. § 47-14-121, -123 (2010). Thus, the contract need not be produced stating that interest may be collected since Tennessee law specifically allows for such collection. *See Clark*, 2014 WL 274469, at *3-4; *White*, 2013 WL 5936679, at *6.

As stated above, the warrant and affidavit do not ask for attorney's fees despite the plaintiff's vague argument in her Response. As such, the Court need not address the issue.

Furthermore, it is the plaintiff's burden to come forth with evidence to show that there is a genuine issue of material fact for trial regarding whether the contract allowed for interest or attorney's fees.[6] A conclusory argument by counsel is not evidence, and the plaintiff may not simply rest on mere allegations or denials contained in her pleadings. *Anderson*, 477 U.S. at 256. Instead, she must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable." *Id.* at 248-52. She has produced no evidence; she merely argues that there is an issue of fact because defendants have not produced a contract.

_____

[6] In reality, it appears that plaintiff attempts to shift the burden of proof on this issue. Plaintiff has the burden of establishing, as an element of her case, that a contract exists or that the contract does not provide for the interest or attorney's fees claimed. It is not the defendants' burden to show the contrary. So far as the Court can tell, plaintiff did not submit a request for document production or interrogatory to defendant nor any request for admission on the contract terms. Plaintiff simply hopes to get before a jury on conclusory and speculative allegations without providing evidence. She is not permitted to do so.

12

There is no evidence from the plaintiff that she did not agree to pay interest or attorney's fees in case of a default. *See Clark*, 2014 WL 274469, at *4. Moreover, she admitted in her deposition that if she stopped paying her bill, then interest would continue to accrue. [Doc. 101, pg. 28].

For these reasons, this Court finds that there is no genuine issue of material fact as to whether defendants violated various sections of the FDCPA because the warrant and affidavit requested interest, even though the defendants have failed to produce a contract allowing for such collection. *See Clark*, 2014 WL 274469, at *3-4; *White*, 2013 WL 5936679, at *6; *see also Murr*, 2014 WL 546690, at *9-13.

## F. Whether defendants violated various sections of the FDCPA because the specific interest rates stated in the warrant, affidavit, and other filings in the case were different?

The plaintiff never addresses this argument in her Response. Therefore, the issue is waived, and she has failed to carry her burden. The plaintiff did, however, refer to *Robinson* in her Response, s*ee Robinson v. Sherman Financial Group*, -- F. Supp. 2d --, 2013 WL 3968446, at *1 (E.D. Tenn. July 31, 2013) (Collier, J.), and plaintiff's counsel has raised the issue in other similar cases in which he is involved. Thus, the Court will address it, but briefly.

As stated above, this Court finds that the warrant and affidavit do not list different interest rates. Actually, the affidavit does not list a specific interest rate at all. Therefore, the interest rates are not inconsistent or misleading. Furthermore, the plaintiff never mentioned the collection letters' amounts, the interest rates of billing statements, or the account event history interest rate as a basis for an issue of fact as to why the interest amounts sought in the warrant and affidavit are misleading in any of the previous filings. As such, this Court will not rely upon those as evidence that the amount of interest sought in the warrant is false or misleading.[7]

---

[7]For detailed discussion on this issue see *Lorinda Smith v. LVNV Funding, LLC, et al.*, No. 2:11-CV-379, 2014 WL 3810633 (E.D. Tenn. Aug. 1, 2014).

13

**G.  Whether defendants violated various sections of the FDCPA because the interest rates listed in the warrant and affidavit were for rates not allowed by Tennessee law?**

The plaintiff makes this allegation in her Complaint, but she never addresses the issue in opposition to the defendants' summary judgment motion as to all claims.  The plaintiff fails to cite any law to support her conclusory allegation.  She does not present any evidence that the rates requested are contrary to Tennessee law.  As such, the Court need not address the argument, and summary judgment on this issue is proper.[8]

**H.  Whether defendants violated section 1692e(11) for failing to include the requisite language in the Sworn Affidavit?**

Initially, this Court notes that the plaintiff failed to address this issue in her Response. Therefore, she has failed to carry her burden to show there is an issue of fact for trial. Nonetheless, the Court will address the issue on the merits.

Section 1692e(11) of the FDCPA requires that all communications which occur subsequent to the initial communication contain the disclosure "that the communication is from a debt collector."  15 U.S.C. § 1692e(11).  However, this disclosure is not required to be included in formal pleadings.  *Id*.

In Tennessee, parties seeking to collect a debt may file an action on a sworn account, *see Am. Exp. Bank, FSB v. Fitzgibbons*, 362 S.W. 3d 93, 96 (Tenn. Ct. App. 2011).  Tennessee law requires that actions on a sworn account be brought "with an affidavit of the plaintiff or its agent as to [the account's] correctness."  Tenn. Code Ann. § 24-5-107(a).  Plaintiff claims that failure to include the disclosure that the communication is from a debt collector on the affidavit attached to the civil warrant violates § 1692e(11).  Defendants argue that the affidavit is part of the formal

---

[8] For detailed discussion on this issue see *Lorinda Smith v. LVNV Funding, LLC, et al*., No. 2:11-CV-379, 2014 WL 3810633 (E.D. Tenn. Aug. 1, 2014).

pleading required by the Tennessee statute and invokes the "formal pleading" exception of § 1692e(11). The Court agrees with the defendants.

The civil warrant and affidavit are the mechanism through which a debt collection action is initiated on a sworn account in the general sessions court in Tennessee. In other words, the civil warrant and affidavit together constitute the formal pleading in general sessions court. To find otherwise, as urged by plaintiff, would conflict with the procedure established by statute in Tennessee and result in a nonsensical nullification of the formal pleading exception. *See Lilly v. RAB Performance Recoveries, LLC*, 2013 WL 3834008 at * 7 (E.D. Tenn. July 23, 2013); *see also White v. Sherman Financial Group*, 2013 WL 5936679 (E.D. Tenn. Nov. 4, 2013).

## I. Whether LVNV is required to have a state collection service license?

The defendants also move for summary judgment on plaintiff's claim based on LVNV's failure to obtain a license as a collection service under Tennessee law, in violation of sections 1692e(5), 1692f and 1692f(1). LVNV alleges that a license is not required, relying on the opinion of the Tennessee Collection Service Board ("the Board") through the issuance of a "Clarification Statement" by the Board in January 2009 and reaffirmed by the Board in May 2012 that certain "passive" debt buyers are not deemed a collection service by the Board.[9]

The Tennessee Collection Service Act ("TCSA") provides that "[n]o person shall commence, conduct or operate any collection service business in this state unless the person holds a valid collection service license issued by the board under [the TCSA] or prior state law." Tenn.Code Ann. § 62–20–105(a). Section 103 provides an exception for attorneys and those

---

[9] The Board, which has been delegated authority to promulgate rules concerning the conduct of collection services, *see* Tenn. Code Ann. § 62-20-115(b)(1), does not appear to have been acting under its rulemaking authority when it issued the Clarification Statement but rather offering the Board's "collective opinion on the subject." *See King v. Midland Funding LLC*, No. 2:11-CV-120 (E.D. Tenn. Aug. 30, 2012).

entities who are collecting solely on those debts incurred in the normal course of business. *Id.* §

62–20–103.[10]  The TCSA defines "collection service" as follows:

> . . . any person that engages in, or attempts to engage in, the collection of delinquent accounts, bills or other forms of indebtedness irrespective of whether the person engaging in or attempting to engage in collection activity has received the indebtedness by assignment or whether the indebtedness was purchased by the person engaging in, or attempting to engage in, the collection activity.

Tenn.Code Ann. § 62–20–102(3).  In *Smith v. LVNV Funding, LLC*, 894 F.Supp.2d 1045, 1049

(E.D. Tenn. 2012) (Greer, J.), this Court held that the failure to obtain the necessary licensing

could give rise to a FDCPA violation for threatening and/or taking legal action which it was not

authorized to do, relying on *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010).

Neither party disputes that the lack of a necessary license could give rise to an FDCPA violation.

The issue presented here is rather simple in its terms, i.e., is LVNV required to have a state

collection service license?  If the answer to this simple question is "no," then there can be no

FDCPA violation, and LVNV is entitled to summary judgment.  The resolution of this simple

question has been anything but simple, however, and has been the subject of opinions by at least

four district judges in this judicial district, leading to a somewhat confusing set of opinions and

what, on the surface, appears to be some disagreement among the judges.  This Court discussed

those opinions at length in *Bradford v. LVNV Funding, LLC et al.*, -- F.Supp.2d --, 2014 WL

1012771 (E.D. Tenn. Feb. 25, 2014), and will not do so again here.  Likewise, this Court will not

---

[10] The Tennessee Legislature has since amended this section to include more exceptions including:

> (9) Any person that holds or acquires accounts, bills or other forms of indebtedness through purchase, assignment, or otherwise; and only engages in collection activity through the use of a licensed collection agency or an attorney authorized to practice law in this state.

Tenn. Code Ann. § 62-20-103(a)(9) (2014).  However, this was not in effect at the time of this suit, and this Court must apply the law in effect at that time.  Therefore, the Court will provide its analysis of the situation when the state case was filed in 2011.

summarize again the Board's Clarification Statement that has played a role in many of those decisions. In addition, the Court thought it appropriate to require the parties in one of the related cases[11] to address this issue raised by reference to the language of the TCSA itself, rather than focusing on the Clarification Statement. *See Bradford v. LVNV Funding, LLC, et al.*, 2:11-CV-291. The parties filed those briefs, [Docs. 142, 143] and filed responses, [Docs. 145,146]. This Court has considered those arguments in deciding this case.

The facts in this case are undisputed. LVNV is an asset holding company and owns accounts receivable, such as plaintiff's account in this case. Typically, LVNV acquires charged-off consumer debts from one of two entities: Sherman Originator or Sherman Originator III. These entities purchase accounts from original creditors, lenders, and other debt buyers. Here it is unclear whether Sherman Originator or Sherman Originator III purchased plaintiff's charged-off account from the original creditor and transferred the account to LVNV. It is undisputed, however, that the debt was transferred to LVNV in 2009. LVNV has no employees, does not send collection letters, and does not make telephone calls to debtors. LVNV does report credit information to the three major credit reporting agencies.[12]

The plaintiff does not dispute the following facts.[13] All collection activities on the charged-off accounts are undertaken by Resurgent, a licensed collection agency. Resurgent services and manages the LVNV accounts either directly or through other licensed collection agencies or law firms. Resurgent hired Buffaloe, a law firm licensed in Tennessee, to collect on plaintiff's account. Buffaloe decides which collection activities to undertake and determines

---

[11] Plaintiffs in all these related cases are represented by the same attorneys.

[12] This information was admitted to in *Bradford*. In *Bradford*, this fact was established by LVNV's response to plaintiff's request for admission on July 29, 2013, [Doc. 146-2], the deposition testimony of Tonya Henderson on June 26, 2013 notwithstanding. The reporting is actually handled by Resurgent Capital Services. [See Doc. 142-2 at 29].

[13] Plaintiff's counsel has disputed these facts in this and other similar cases. However, for the reasons stated in *Sells v. LVNV Funding, LLC, et al.*, 2:11-CV-355, any dispute over these facts is without merit.

17

whether to ultimately file suit. LVNV plays no role in these decisions. In this case, Buffaloe filed the civil warrant and affidavit of indebtedness and ownership of account, prepared and signed by LVNV's authorized representative, in the General Sessions Court, naming plaintiff as the defendant and LVNV, assignee, as plaintiff. The lawsuit was later non-suited.

The TCSA requires a collection service license before any person may "commence, conduct or operate" a "collection service business." Tenn. Code Ann. § 62-20-105(a). "Collection service" is broadly defined as "engag[ing] in, or attempt[ing] to engage in, the collection of delinquent accounts . . .," regardless of whether the person "engaging in, or attempting to engage in collection activity" acquired the indebtedness by assignment or by purchase. Tenn. Code Ann. § 62-20-102(3). The definition specifically includes:

> . . . .
>
> (D) Any person who engages in the solicitation of claims or judgments for the purpose of collecting or attempting to collect claims or judgments or who solicits the purchase of claims or judgments for the purpose of collecting or attempting to collect claims or judgments by engaging in or attempting to engage in collection activity relative to claims or judgments.

Tenn. Code Ann. § 62-20-102(3)(D) Neither "collection" nor "collection activity" is defined in the Act.

It appears beyond dispute that LVNV is a legal entity which purchases accounts or judgments for the purpose of collecting or attempting to collect them. LVNV argues, however, that it does not "engage" in "collection" or "collection activity." More specifically, LVNV argues that it does not involve itself, or take part in, the act of collecting, *i.e.*, securing payment, but rather that all collection/collection activity is undertaken by others, namely, Resurgent, a licensed collection agency, which services and manages all of LVNV's accounts. Plaintiff first made a halfhearted response in *Bradford* that the statute does not require that a person "engage"

18

in collection activity but also includes those who "engage[ ] in the solicitation of claims or judgments for the purpose of collecting or attempting to collect claims or judgments." [Doc. 146 at 1].[14]  Plaintiff's reading of the statute is awkward and appears to be contrary to the plain meaning of § 102(3)(D), that is, that the language covers either those who solicit claims or judgments for the purpose of collecting or who solicit the purchase of claims or judgments for the purpose of collecting or attempting "by engaging in or attempting to engage in collection activity" relative to those claims or judgments.  In other words, even if plaintiff is correct, the Act's coverage requires that the entity engage in collection activity.

Plaintiff also argued in *Bradford*, and implicitly here also, that LVNV does engage in collection activity by (1) its reporting to credit reporting agencies, and (2) filing of collection lawsuits as the named plaintiff to seek a judgment it can collect.  Plaintiff cited a host of cases for the proposition that filing a collection lawsuit is collection activity, a largely unremarkable assertion hardly subject to dispute, and LVNV does not really argue otherwise.  Plaintiff also has argued that LVNV cannot insulate itself by hiring others to file suit to collect its debts and that Congress never intended that "a passive" debt buyer avoid liability under the FDCPA by simply hiring a law firm to file suit.  Even assuming that a debt buyer cannot insulate itself from FDCPA liability by hiring others to engage in collection activity, that does not answer the question of whether the Tennessee Legislature intended to require a debt buyer who does not engage in collection activities itself, but rather relies on others, to have a collection service license.

---

[14]   Plaintiff seems to assume that, because LVNV acquires delinquent accounts, it "solicits" those accounts.  That interpretation does not appear to be consistent with the statute.  In other words, under the TCSA, an entity which purchases debt is not necessarily engaged in the "solicitation" of debt.  Rather, the act of solicitation is something conducted by a "solicitor," defined in the Act as "any individual who is employed by or under contract with a collection service to solicit accounts or sell collection service forms or systems on its behalf." Tenn. Code Ann. § 62-20-102(9).

LVNV has relied heavily on the Clarification Statement issued by the Board in January 2009. That statement, issued as the collective opinion of the Board rather than pursuant to the Board's rule making authority, *see* Tenn. Code Ann. § 62-20-115(b)(1), reads:

> It is currently the opinion of the Tennessee Collection Service Board that entities who purchase judgments or other forms of indebtedness will be deemed a "collection service" if they collect or attempt to collect the debt or judgment subsequent to their purchase of the debt or judgment. However, entities who purchase debt or judgments in the manner described above but who do not collect or attempt to collect the purchased debt or judgment, but rather assign collection activity relative to the purchased debt to a licensed collection agency or a licensed attorney or law firm shall not be deemed to be a "collection service."

Tennessee Collection Service Board, *Clarification Statement of the Tennessee Collection Service Board Regarding Debt/Judgment Purchasers and 'Passive' Debt Buyers*, http://www.tn.gov/regboards/collect/documents/CSBCLARIFICATIONSTATEMENT-REGARDINGDEBT.pdf. The Board reaffirmed the Clarification Statement in May, 2012 and stated that the statement "would currently stand as written." Both Judge Collier and Judge Varlan have given the Clarification Statement significant weight in light of its reaffirmation by the Board. Yet, the undersigned has been reluctant to do so given the lack of analysis contained in the Board's statement and the lack of formal action by the Board in promulgating the statement, making it of little help in determining the meaning of the Legislature's enactment. Second, the opinion of the Board as to the meaning of the statute is far less important where the statute does not contain technical terms, as is the case here, and where the agency's interpretation does not involve its own rules and regulations, but rather the construction and interpretation of such statute.

Under the unique circumstances of this case, the Court is persuaded by LVNV's argument and holds that an entity that does not engage in collection activities itself but relies on licensed collection agencies and licensed attorneys to conduct those activities[15] need not be licensed pursuant to the TCSA, and LVNV's failure to obtain the license does not constitute a violation of the FDCPA. To the extent prior decisions of the undersigned might conflict with this opinion, they are now overruled.[16]

Several things have convinced the Court that LVNV is correct in this case as it argued in *Bradford*. First of all, the Court agrees with LVNV that LVNV has not "engaged" in collection activity unless it has taken part in, or involved itself directly in, the collection activity and that the licensing requirement applies only to those persons who actually involve themselves in, or take part in, the act of collecting. Second, the Court agrees with LVNV that, from a policy standpoint, requiring LVNV to be licensed and regulated by the state accomplishes little in terms of protecting debtors or clients of collection services, where the entities that do have direct interaction are licensed and state regulated. Indeed, the structure of the Act itself suggests that its primary purpose is to assure the financial responsibility of collection service businesses to protect clients who retain the services of a collection service business from a collection service that is not financially sound.

This conclusion is supported by several of the TCSA's requirements for collection services, such as the requirement that an applicant for a collection service license provide the Board with a current personal or corporate financial statement and a surety bond or certificate of

---

[15]    Although not clear to the Court, this may be what the Board means by a "passive" debt buyer, i.e. one that undertakes no collection activity itself.

[16]    Both of the Court's prior decisions in *Raceday* and *King* are distinguishable from this case, *Raceday* on its facts and *King* procedurally. In *Raceday*, the defendants/counter-plaintiffs were directly involved in collection activity. *King*, on the other hand, was before the Court on a motion to dismiss and the question was whether plaintiff had sufficiently pled a cause of action, not whether a genuine issue of material fact existed, as is the case here.

deposit "conditioned that the applicant shall faithfully and truly perform all agreements entered into with its clients accounting for the net proceeds of all collections in accordance with this chapter . . .," *see* Tenn. Code Ann. §§ 62-20-106(2) and (3)(A) and (B), and requiring an applicant to meet a requirement of financial responsibility and the maintenance of a regular office and "bank accounts with sufficient funds at all times to disburse amounts due clients." Tenn. Code Ann. § 62-20-107. Furthermore, the TCSA provides that upon violation of the conditions of the bond or certificate of deposit assigned, "the injured client may maintain an action in the client's own name on the bond or certificate of deposit of the collection service." Tenn. Code Ann. § 62-20-110.

Finally, to the extent the statute is ambiguous, the Court also agrees with LVNV as it argued in *Bradford* that the statute should be construed in favor of LVNV under the circumstances presented here. The TCSA is a regulatory statute and contains a criminal sanction for a willful violation of the statute or any rule lawfully promulgated by the Board. *See* Tenn. Code Ann. § 62-20-123 (making such violation a Class C misdemeanor punishable, according to Tennessee Code Annotated § 40-35-111(e)(3), by a term of imprisonment of not more than 30 days or a fine not to exceed $50.00 or both). The Court agrees that, in this situation, the rule of lenity requires that the statute be construed in favor of the defendant. *State v. Marshall*, 319 S.W. 3d 558, 563 (Tenn. 2010).[17]

### J. Whether there is an issue of fact regarding vicarious liability?

Even though this Court has concluded that there is no genuine issue of material fact for trial, this Court will still decide the vicarious liability issue. This Court finds the reasoning and the cases cited in *White* persuasive. 2013 WL 5936679, at *10-11. It appears to be undisputed

---

[17] Due to this Court's ruling, this Court need not discuss whether the Bona Fide Error defense applies regarding this licensure issue.

that LVNV hired Resurgent and Buffaloe to carry out debt collection efforts. In addition, Griffin was an "Authorized Representative for LVNV." [Doc. 1-1, pg. 3]. Therefore, for the reasons stated in *White*, this Court concludes that LVNV may be held liable for any of Buffaloe's or Griffin's FDCPA violations. As state above, however, there are no violations, so this issue is actually moot.

## IV. CONCLUSION

For the reasons set forth above, plaintiff's Motion for Partial Summary Judgment, [Doc. 109], is DENIED, and defendants' Motion for Summary Judgment, [Doc. 100], is GRANTED.

ENTER:

_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
